**William R. BUTLER and ReGlaze, Inc., Appellants,**

v.

**ARROW MIRROR & GLASS, INC., Appellee.**

**Arrow Mirror & Glass, Inc., Appellant,**

v.

**William R. Butler and ReGlaze, Inc., Appellees.**

**No. 01–00–00445–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

June 21, 2001.

Rehearing Overruled Aug. 2, 2001.

Kent M. Hanszen, Houston, for appellant.

Anthony E. Maluski, Houston, for appellee.

Panel consists of Justices MIRABAL, JENNINGS, and DUGGAN.*

## OPINION

JENNINGS, Justice.

Appellants, William Butler (Butler) and ReGlaze, Incorporated (ReGlaze), appeal the trial court's final judgment and issuance of a permanent injunction enjoining them from doing business in Harris and Fort Bend Counties pursuant to a covenant not to compete clause in Butler's previous employment agreement with appellee, Arrow Mirror and Glass, Incorporated (Arrow), Butler's former employer. In three points of error, Butler and ReGlaze claim (1) the covenant not to compete is unenforceable as a matter of law, (2) the issuance of the permanent injunction was improper, and (3) the court erred in enjoining ReGlaze because it was not a party to the covenant not to compete. Arrow has filed three cross-points claiming the trial court erred by (1) narrowing the geographical scope of the covenant not to compete, (2) failing to award Arrow damages, and (3) failing to award Arrow its attorney's fees. We affirm in part and reverse and render in part.

### Facts and Procedural History

Arrow's primary business is making and installing shower stalls and mirrors for new home builders, comprising 90 percent of its revenues. Arrow also offers reglazing[1] services independently and as an incentive for builders to purchase a package of services, comprising the remaining 10 percent of its revenues.

On April 6, 1998, Arrow hired Butler as its Operations Manager. His primary job responsibilities were to supervise fabrication of mirrors and stalls in the fabrication shop, purchase materials for inventory, and oversee the dispatch office which handled customer service issues that arose at the building sites. Prior to working for Arrow, Butler had no experience in the glass business.

Butler's employment agreement with Arrow contained a post-termination non-competition clause restricting Butler from engaging in "the same or similar" type of business for a period of two years after leaving Arrow in seven counties within the Houston metropolitan area and in any other area where Arrow began doing business during the term of Butler's employment.

Butler resigned from Arrow on June 28, 1999. In August of 1999, he started his own business, ReGlaze, which was incorporated under Texas law.[2] ReGlaze, as its name implies, focused solely on providing reglazing services for new home builders. On August 13, 1999, Arrow sent a letter to Butler requesting that he "honor the non-compete covenant which [he] voluntarily entered into with Arrow and cease all glass related activities which would result in [his] breaching the non-compete covenant." Butler continued to operate his reglazing business.

At the end of August, Arrow filed this lawsuit against Butler and ReGlaze, seeking injunctive relief and damages for Butler's breach of the covenant not to compete. Butler and ReGlaze answered with a general denial and a verified denial claiming failure of consideration.

---

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. Reglazing is a term for replacing broken windows.

2. Butler testified he was "[p]resident and owner of ReGlaze, Incorporated."

Following a bench trial[3] and post-trial hearings, the trial court reformed the covenant not to compete and issued a permanent injunction enjoining Butler and Re-Glaze as follows:

> [Butler] and [ReGlaze] are enjoined from directly or indirectly, either as an employee, officer, director, consultant[,] agent, principal, partner, owner, or in any other individual or representative capacity, engaging or participating in *selling and/or installing mirrors and glass products in new residential construction in Harris, and Fort Bend,* Counties, Texas, for a period ending on June 28, 2001 . . . .

(Emphasis added.) The court made the following findings of fact and conclusions of law:

1. *Findings of fact:*

   1. William Butler failed to comply with the terms of his contract with Arrow.

   2. The non competition agreement is ancillary to or part of an otherwise enforceable agreement.

   3. The limitations of the non competition agreement as to time and scope of activity to be restrained are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee, Arrow.

   4. The limitations of the non competition agreement as to geographical area, once reformed to include only Harris and Fort Bend Counties, Texas, are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee, Arrow.

   5. The amounts of attorney's fees stipulated to by the parties are usual, customary, and reasonable.

2. *Conclusions of law:*

   1. As reformed, the non competition agreement is enforceable.

   2. Arrow did not prove its lost profits by competent evidence and with reasonable certainty.

   3. Since Arrow did not adequately prove its lost profits, its claims for damages under its breach of contract, conversion, and tortious interference theories are denied.

   4. Because Arrow did not adequately prove a pecuniary loss, it is not entitled to recover its attorney's fees.

Butler and ReGlaze appeal from the issuance of the permanent injunction. Arrow, by cross-appeal, challenges the reformation of the covenant not to compete and the portion of the judgment denying it damages and attorney's fees.

### *Standard of Review*

■ The decision to grant or deny a permanent injunction is ordinarily within the sound discretion of the trial court if a bench trial has been conducted, and appellate review of the trial court's action is limited to the question of whether such action constituted a clear abuse of discretion. *Crain v. Unauthorized Practice of Law Committee of the Supreme Court of Texas,* 11 S.W.3d 328, 332 (Tex.App.—Houston [1st Dist.] 1999, pet. denied). An abuse of discretion occurs if the trial court (1) acts arbitrarily and unreasonably, without reference to guiding rules or principles or (2) misapplies the law to the established facts of the case. *Baywood Country Club v. Estep,* 929 S.W.2d 532, 535 (Tex.App.—

---

**3.** Arrow presented the testimony of Arrow president Ken Hicks, accountant Kathryn Nicholson, and Butler.

Houston [1st Dist.] 1996, writ denied). An abuse of discretion does not exist if the trial court heard conflicting evidence, and evidence appears in the record that reasonably supports the trial court's decision. *CRC–Evans Pipeline Int'l, Inc. v. Myers,* 927 S.W.2d 259, 262 (Tex.App.—Houston [1st Dist.] 1996, no writ). We may not substitute our judgment for that of the trial court. *Myers,* 927 S.W.2d at 262.

■ When, as here, specific findings of fact and conclusions of law are filed and a statement of facts is before the appellate court, the findings will be sustained if there is evidence to support them, and the appellate court will review the legal conclusions drawn from the facts found to determine their correctness. *Myers,* 927 S.W.2d at 263.

### Enforceability and Reformation of the Covenant Not to Compete

■ The enforceability of a covenant not to compete is a question of law for the court. *Light v. Centel Cellular Co.,* 883 S.W.2d 642, 644 (Tex.1994); *Myers,* 927 S.W.2d at 263. We review questions of law de novo and without deference to the lower court's conclusion. *Precast Structures, Inc. v. City of Houston,* 942 S.W.2d 632, 636 (Tex.App.—Houston [14th Dist.] 1996, no writ).

We apply the Covenants Not to Compete Act which provides two criteria for the enforceability of a covenant not to compete. TEX. BUS. & COM.CODE ANN. § 15.50(a) (Vernon Supp.2001). The covenant must (1) be "ancillary to or part of an otherwise enforceable agreement" and (2) contain "limitations as to time, geographi-

cal area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." *Id.*

The Act expressly states that if the limitations as to time, geographical area, or scope of activity to be restrained are not reasonable or they impose a greater restraint than is necessary to protect the goodwill or other business interest of a promisee, "the court *shall reform* the covenant to the extent necessary to cause the limitations ... to be reasonable and to impose a restraint that is not greater than necessary" and *"enforce the covenant as reformed...."* TEX. BUS. & COM.CODE ANN. § 15.51(c) (Vernon Supp.2001) (emphasis added).[4]

■ The Act further provides that sections 15.50 and 15.51 "are exclusive and preempt any other criteria for enforceability of a covenant not to compete...." TEX. BUS. & COM.CODE ANN. § 15.52 (Vernon Supp.2001). Thus, section 15.52 makes clear the legislature intended the Covenants Not to Compete Act "to largely supplant the Texas common law relating to enforcement of covenants not to compete." *Light,* 883 S.W.2d at 644; *see also* TEX. BUS. & COM.CODE ANN. § 15.52.[5]

Butler's employment agreement provides in pertinent part:

Employee acknowledges that, during the term of his employment by Employer, Employee will be entrusted with and have access to trade secrets, confidential and proprietary data and information, and intimate knowledge

---

4. Before this section was amended in 1993, section 15.51 permitted the trial court to reform unreasonable limits within non-compete covenants only at the request of the promisee. *See Gomez v. Zamora,* 814 S.W.2d 114, 119 (Tex.App.—Corpus Christi 1991, no writ).

5. Therefore, as noted by the Texas Supreme Court, the common law approach Butler and ReGlaze argue by relying on *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 681–85 (Tex.1990), has been superseded by statute. *See Light,* 883 S.W.2d at 643–44.

of Employer's business practices which, if used by Employee in competition with Employer, would seriously, adversely and irreparably affect Employer's business. In exchange for the trust extended by Employer in this regard, Employee therefore agrees, warrants and covenants that during the term of this Agreement (including extensions) and for a period of *two (2) years* following termination of Employee's employment. [sic] Employer, whether voluntary, involuntary, or by expiration of this Agreement, *Employee will not,* directly or indirectly, either as an employee, employer, officer, director, consultant, agent, principal, partner, owner, or in any other individual or representative capacity, *engage or participate in a business that is in competition with employer in Harris, Montgomery, Galveston, Chambers, Fort Bend, Brazoria and Waller Counties, Texas,* and in any other geographical areas in which Employer is currently doing business and/or may commence doing business during the term of Employee's employment with Employer. A "business that is in competition with Employer" is defined as a business that provides or offers the same or similar type or services, goods and materials as provided or offered by Employer during the term of Employee's employment. Employee agrees that the limitations imposed upon employee by this non-competition covenant are reasonable, necessary, and do not impose a greater restraint than is necessary to protect the goodwill and business interest of Employer.

(Emphasis added.) The parties do not dispute that the covenant not to compete is ancillary to or part of an otherwise valid agreement, and no one argues the two-year time limit was improper. Therefore, our analysis focuses on the reasonableness of the limitations imposed by the covenant in its original form and as reformed by the trial court.

In point of error one, Butler and ReGlaze claim the covenant not to compete is unenforceable as a matter of law because (1) the geographic restraints of the covenant are unreasonable; (2) Arrow failed to establish a protectable interest; (3) the harm to Butler and ReGlaze if the covenant is enforced outweighs any threat of injury to Arrow; and (4) the trial court's reformation of the covenant was improper. In a single cross-point, Arrow argues the trial court erred in narrowing the geographical scope of the covenant not to compete.

### a. Reformation of the Geographic Limitations

The breadth of enforcement of territorial restraints in covenants not to compete depends upon the nature and extent of the employer's business and the degree of the employee's involvement. *Allan J. Richardson & Assocs., Inc. v. Andrews,* 718 S.W.2d 833, 835 (Tex.App.—Houston [14th Dist.] 1986, no writ). The covenant must bear some relationship to the activities of the employee; if it is over broad, the court may reform its terms to make them reasonable. *Id.* Generally, a reasonable area for purposes of a covenant not to compete is considered to be the territory in which the employee worked while in the employment of his employer. *Curtis v. Ziff Energy Group, Ltd.,* 12 S.W.3d 114, 119 (Tex.App.—Houston [14th Dist.] 1999, no pet.); *Evan's World Travel, Inc. v. Adams,* 978 S.W.2d 225, 232–33 (Tex.App.—Texarkana 1998, no pet.).

A covenant not to compete with a broad geographical scope is unenforceable,

particularly when no evidence establishes the employee actually worked in all areas covered by the covenant. *Adams,* 978 S.W.2d at 233. However, instead of invalidating a covenant not to compete, Texas courts have usually reformed the covenant, revising the provisions to those which are reasonable under the circumstances. *Andrews,* 718 S.W.2d at 835–36. Furthermore, Texas Business and Commerce Code section 15.51 imposes a statutory duty on a court to reform a covenant that it finds unreasonable as to time, geographical area, or scope of activity. Tex. Bus. & Com.Code Ann. § 15.51(c).

Butler and ReGlaze's contention that the geographic restraints of the covenant as reformed were still too restrictive and Arrow's cross-point claiming the trial court's reformation of these restraints was not justified are equally without merit. The trial court in this case not only acted within its rights in reforming the covenant, but it followed a statutorily imposed duty. *See* Tex. Bus. & Com.Code Ann. § 15.51(c).

Butler worked in Arrow's Houston office, located in Harris County. Butler interacted with builders over the phone, oversaw operations, and dispatched workers to building sites. Hicks, Arrow's vice-president, called him the "front line" of their customer service. The majority of Butler's work concerned activities and operations in Harris County, and the majority of customers he interacted with during his employment at Arrow were located in Harris and Fort Bend Counties. Thus, the trial court's reformation of the geographical area of the covenant to include only Harris and Fort Bend Counties was reasonably supported by the evidence.

*b. Scope of Activity*

■ Butler and ReGlaze contend that Arrow had no protected interest, and thus enforcing the covenant, in whatever form, was improper. They argue the covenant imposes restraints greater than necessary to protect Arrow's business interests or goodwill and that the harm to Butler and ReGlaze from the covenant's enforcement outweighed any threat of injury to Arrow. However, the Covenants Not to Compete Act only requires that limitations of the "scope of activity" be "reasonable" and not "impose a greater restraint than necessary to protect the goodwill or other business interest of the promisee," in this case, Arrow. Tex. Bus. & Com.Code Ann. § 15.50(a).

Contrary to Butler's and ReGlaze's assertions, there is evidence supporting the trial court's restriction of Butler and ReGlaze from engaging or participating in selling and/or installing mirrors and glass products in new residential construction. Before working at Arrow, Butler had no prior experience working in the glass business, and, in a solicitation letter for his reglazing business, Butler cited his experience as manager of a major Houston glass company to attract new business. Additionally, Hicks testified that 10 of ReGlaze's 12 customers were current or former Arrow customers.

■ The covenant as reformed enjoins Butler and ReGlaze from "installing mirrors and glass products in *new residential construction*" (emphasis added); Butler and ReGlaze were not enjoined from doing business in commercial construction. Restraints are "easier to justify if ... limited to one field of activity among many that are available to the employee." Restatement (Second) of Contracts § 188 cmt. g (1979). The restraint on Butler's reglazing business was appropriately limited to residential construction.

The restriction on Butler and ReGlaze enjoining them from "installing mirrors and glass products in new residential con-

struction" was reasonable and did not impose a greater restraint than necessary to protect Arrow's goodwill and other business interests.

We overrule Butler and ReGlaze's first point of error, and we overrule Arrow's first cross-point.

### Permanent Injunction

■ In point of error two, Butler and ReGlaze contend the trial court erred in issuing the permanent injunction because Arrow failed to establish an irreparable injury for which it had no adequate legal remedy.

■ At common law, to secure a permanent injunction a party must plead and prove an irreparable injury for which no adequate remedy at law exists. *Priest v. Texas Animal Health Comm'n,* 780 S.W.2d 874, 875 (Tex.App.—Dallas 1989, no writ). However, if an applicant relies on a statute that defines the requirements for injunctive relief, then the express statutory language supersedes common law requirements. *Hilb, Rogal & Hamilton Co. of Texas v. Wurzman,* 861 S.W.2d 30, 33 (Tex.App.—Dallas 1993, no writ); *see also Bartley v. Guillot,* 990 S.W.2d 481, 485 (Tex.App.—Houston [14th Dist.] 1999, pet. denied) ("Where the common law is revised by statute, the statute controls."). As already discussed, the Covenants Not to Compete Act provides the criteria for enforceability of a covenant not to compete. TEX. BUS. & COM.CODE ANN. § 15.50. If the promisor breaches a covenant not to compete, section 15.51 of the Texas Business and Commerce Code provides that "a court may award the promisee under a covenant not to compete *damages, injunctive relief, or both* damages and injunctive relief for a breach by the promisor of the covenant." TEX. BUS. & COM.CODE ANN. § 15.51(a) (emphasis added). Moreover, section 15.52, entitled "Preemption of Oth-

er Law," provides that "[t]he criteria for enforceability of a covenant not to compete provided by section 15.50 of this code and the procedures and remedies in an action to enforce a covenant not to compete provided by Section 15.51 of this code *are exclusive and preempt any other criteria for enforceability of a covenant not to compete or procedures and remedies* in an action to enforce a covenant not to compete *under common law or otherwise."* TEX. BUS. & COM.CODE ANN. § 15.52 (emphasis added). Thus, a showing by the promisee of an irreparable injury for which he has no adequate legal remedy is not a prerequisite for obtaining injunctive relief under the Covenants Not to Compete Act. TEX. BUS. & COM.CODE ANN. §§ 15.50, 15.51(a).

We overrule Butler and ReGlaze's second point of error.

### ReGlaze as a Party

■ In their third point of error, Butler and ReGlaze contend the trial court erred in issuing an injunction against ReGlaze because it was not a party to the covenant not to compete. They argue the injunction restricts the activities of ReGlaze, a separate entity from Butler that is wholly independent of Arrow's non-compete covenant.

Arrow's first amended petition names ReGlaze as a party against which it is seeking relief and alleges ReGlaze is a Texas corporation with its principal office in Harris County, Texas. Butler and ReGlaze answered with a general denial.

The covenant not to compete specifically provides Butler "will not directly or indirectly, either as an employee, employer, officer, director, consultant, agent, principal, *owner or in any other individual or representative capacity* engage in a business that is in competition with [Arrow]."

Butler expressly agreed not to own or work for another business in competition with Arrow. It is uncontroverted that Butler formed ReGlaze a month after he resigned from Arrow, he was its owner and president, and ReGlaze's sole business purpose was to provide reglazing services for new home builders, a service provided by Arrow. These undisputed facts justify the trial court's injunction against Re-Glaze, which was formed by Butler specifically to compete with Arrow.

We overrule Butler and ReGlaze's third point of error.

### Damages

■ Arrow's second cross-point claims the trial court should have awarded Arrow its damages. Because we find the trial court properly reformed the covenant, Arrow cannot recover damages.

Texas Business and Commerce Code section 15.51(c) provides that, if the court reforms the covenant and enforces it as reformed, "the court may not award the promisee damages for a breach of the covenant before its reformation and the relief granted to the promisee shall be limited to injunctive relief." TEX. BUS. & COM.CODE ANN. § 15.51(c). Other courts have applied this statute in an identical fashion, refusing to award damages when a covenant is enforced as reformed. *See General Devices, Inc. v. Bacon,* 888 S.W.2d 497, 503 (Tex.App.—Dallas 1994, writ denied).

Applying section 15.51 to this case, once the trial judge reformed the covenant, money damages were precluded. No damages can be awarded for breach prior to the reformation; after reformation, the current injunction was in place preventing

ReGlaze from competing with, and thus, harming Arrow.

We overrule Arrow's second cross-point.

### Attorney's Fees

■ Arrow's third cross-point contends the trial court should have awarded Arrow its attorney's fees. In its findings of fact, the trial court found "[t]he amounts of attorney's fees stipulated to by the parties are usual, customary, and reasonable." However, in its conclusions of law, the trial court erroneously determined that Arrow was not entitled to recover its attorney's fees "because it did not adequately prove a pecuniary loss."

■ The Texas Civil Practice and Remedies Code provides for the recovery of reasonable attorney's fees "in *addition* to the amount of a *valid* claim and costs" on an oral or written contract.[6] TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1997) (emphasis added). When an appropriate claim has been asserted in accordance with section 38.001, it is an abuse of discretion for a trial court to deny attorney's fees entirely. *Budd v. Gay,* 846 S.W.2d 521, 524 (Tex.App.—Houston [14th Dist.] 1993, no writ).

■ Butler and ReGlaze's contention that Arrow must recover money damages to be entitled to attorney's fees is incorrect, and their reliance on *Green Int'l, Inc. v. Solis,* 951 S.W.2d 384 (Tex.1997) is misplaced. In *Solis,* the Texas Supreme Court held that to recover attorney's fees under Chapter 38, "a party must (1) prevail on a cause of action for which attorney's fees are recoverable and (2) recover damages." *Solis,* 951 S.W.2d at 390; *State Farm Life Ins. v. Beaston,* 907 S.W.2d 430,

---

6. The Covenants Not to Compete Act addresses the issue of attorney's fees in the context of a covenant obligating the promisor to render personal services and the promisee seeking to enforce the covenant to a greater extent than necessary. TEX. BUS. & COM.CODE ANN. § 15.51(c). This provision is not applicable here.

437 (Tex.1995) (citing *Rodgers v. RAB Invs., Ltd.,* 816 S.W.2d 543, 551 (Tex. App.—Dallas 1991, no writ)). However, the required "damages" are not limited to a monetary award based on a pecuniary loss.

Reasonable attorney's fees may be recovered only "in *addition* to the amount of a *valid claim....* " TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (emphasis added). Therefore, the "claim presented by an attorney's fee claimant must be valid." *ITT Commercial Fin. Corp. v. Riehn,* 796 S.W.2d 248, 256 (Tex.App.—Dallas 1990, no writ). Also, "there must be a recovery of money, *or at least something of value;* otherwise, the attorney's fee award cannot be described as an 'addition' to the claimant's relief." *Rodgers,* 816 S.W.2d at 551, (citing *Riehn,* 796 S.W.2d at 256) (emphasis added). In *Riehn,* the court concluded debtors, who "had no true damages for which they might have claimed," could not recover attorney's fees on their counterclaim against a lender. *Riehn,* 796 S.W.2d at 256.

The Fourteenth Court of Appeals upheld an award of attorney's fees where an employer was granted an injunction, but not damages, against a former employee for breach of a covenant not to compete. *Williams v. Compressor Eng'g Corp.,* 704 S.W.2d 469, 474 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e). Likewise, in this case, the prevailing party, Arrow, obtained a permanent injunction enjoining Butler and ReGlaze from "selling and/or installing mirrors and glass products in new residential construction in Harris, and Fort Bend, Counties, Texas." Although Arrow did not prove its lost profits and obtain money damages, it demonstrated that a restraint on Butler's and ReGlaze's business activities was necessary to protect Arrow's goodwill and business interests. The injunction had the direct effect of removing Butler and ReGlaze from competition with Arrow for its customers, which was of considerable value to Arrow. Thus, a recovery of attorney's fees by Arrow in this case would in fact be an *addition* to Arrow's relief.

Butler, ReGlaze, and Arrow stipulated to the amount of reasonable and necessary attorney's fees through trial and for each stage of the appellate process. As the prevailing party, Arrow was entitled to recover its reasonable attorney's fees. *See id.*

We sustain Arrow's third cross-point.

We reverse that part of the judgment denying Arrow recovery of its attorney's fees and render judgment in favor of Arrow for the recovery of attorney's fees in the amount of $30,500, as stipulated by the parties. We affirm the remainder of the judgment and the issuance of the permanent injunction. All pending motions are overruled.